United States District Court
District of Massachusetts

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY,**  )<br>  )<br>Petitioner,  )<br>  )<br>v.  )<br>  )<br>**ONEBEACON AMERICAN INSURANCE COMPANY,**  )<br>  )<br>Respondent.  )<br>  ) | Civil Action No.<br>13-12368-NMG |

**MEMORANDUM & ORDER**

**GORTON, J.**

Petitioner Allstate Insurance Company ("Allstate") is engaged in ongoing arbitration with respondent OneBeacon American Insurance Company ("OneBeacon") concerning a series of reinsurance contract disputes. Allstate seeks to enjoin the arbitration proceedings based on OneBeacon's alleged violation of the arbitration agreement's Umpire Selection Protocol.

Pending before the Court are 1) Allstate's initial motion to enjoin arbitration permanently, 2) Allstate's subsequent motion for temporary restraining order and preliminary injunction and 3) OneBeacon's cross-motion to compel arbitration. Because Allstate cannot demonstrate that it is likely to succeed on the merits of its claim or that it will suffer irreparable harm in the absence of an injunction, the Court will deny Allstate's motions for injunctive relief.

-1-

**I.    Background**

This case arises from a series of reinsurance contracts between Allstate and OneBeacon, all of which contain a provision requiring the parties to submit any dispute to arbitration. The substance of the reinsurance contracts is not at issue in this case. In April, 2012, OneBeacon demanded arbitration of its dispute with Allstate under two separate reinsurance contracts. After the parties were unable to reach a settlement OneBeacon issued a supplemental arbitration demand in June, 2013. In the supplemental demand, OneBeacon proposed proceeding with arbitration and umpire selection in accordance with the previously agreed upon protocol ("the Protocol").

The arbitration agreements under both contracts are substantially the same and require arbitration to be conducted before a Board of Arbitration composed of two party-appointed arbitrators and one umpire. To select the umpire according to the Protocol, both party-appointed arbitrators name three qualified individuals after which each arbitrator strikes two names chosen by his or her counterpart. The umpire is then chosen by lot from the two remaining names. The Protocol also provides that

> There shall be no ex parte communications with any umpire candidate. To maintain impartiality, each umpire candidate shall complete an umpire Questionnaire based on the ARIAS US form (subject to reasonable modifications by the parties). The parties

>   shall jointly provide the Umpire Questionnaire to each umpire candidate.

The Protocol also requires that the Umpire

>   shall be [a] disinterested current or former officer[] of insurance or reinsurance companies authorized to transact business in the United States.

In July, 2013, the parties selected arbitrators and Charles Ehrlich ("Ehrlich") was designated as umpire. Ehrlich was notified on July 15, 2013, of his appointment.

Erhlich subsequently solicited papers from the parties which they provided on August 7, 2013. OneBeacon's Statement of Position included an addendum comprised of OneBeacon's prior supplemental arbitration demand which contained information sufficient for the arbitrators to determine the method by which the umpire was to be selected and that OneBeacon had proposed Ehrlich as umpire.

On August 22, 2013, Allstate wrote to Ehrlich advising him of the erroneous submission and demanding his withdrawal because knowledge of his selection would "fundamentally corrupt[] the integrity of the process." On August 26, 2013, Ehrlich responded to and denied Allstate's request, although he "acknowledge[d] that it is general practice that the Umpire is not made aware of who proposed him/her for the position."

On September 5, 2013, Allstate filed an Application and Motion to Enjoin Arbitration, Remove Umpire and Compel

Arbitration in this Court.  The next day, Allstate argued to the designated arbitration panel that the arbitration should be stayed until the Court's ruling.  The panel instead declared that it had been "duly constituted" and could proceed. That same day, Allstate submitted a Statement of Position with the panel, after which an organizational meeting was held one week later.

On September 17, 2013, Allstate filed in this Court an Emergency Motion for Temporary Restraining Order and Preliminary Injunction based on its previously filed motion to enjoin arbitration.  On September 19, 2013 OneBeacon responded to Allstate's initial motion for an injunction and filed its own Cross-Petition to Compel Arbitration. A preliminary injunction hearing was held on September 26, 2013, after which the Court took the matter under advisement.

**II. Allstate's Motion for a Preliminary Injunction**

    **A.   Legal Standard**

Under the familiar standard, a movant seeking a preliminary injunction must demonstrate that he

> is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008)).  Even under this

standard, "[a] preliminary injunction is an extraordinary and drastic remedy" that "is never awarded as of right." Voice of the Arab World, 645 F.3d at 32 (quoting Munaf v. Green, 553 U.S. 674, 689-90 (2008)).  Although injunctions must be rooted in an irremediable harm, a plaintiff's likelihood of success on the merits is the test's "main bearing wall." Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996).

    B.    **Legal Analysis**

        (1)    **Likelihood of Success on the Merits**

            a.    **Preliminary Injunction Standard**

The first factor to consider in granting a preliminary injunction is whether the movant is likely to succeed on the merits. Voice of the Arab World, 645 F.3d at 32.  Although it is only the first of four factors, the likelihood of success on the merits inquiry is the test's "sine qua non." Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993).

            b.    **Challenging Arbitration Proceedings**

The Federal Arbitration Act ("FAA") clearly states that any agreement on the "method of naming or appointing an arbitrator ... shall be followed." 9 U.S.C. § 5.  The FAA also authorizes courts to issue orders mandating that "arbitration proceed in the manner provided for in [an] agreement." 9 U.S.C. § 4.  These provisions speak to the manner in which the arbitration proceeds

in relation to the underlying agreement to arbitrate.  If that agreement is violated, a court can order arbitration under § 4 of the FAA according to the agreement's terms.  See Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989).

The FAA also allows for an arbitration decision to be challenged under § 10 "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2).  Before a final arbitration award is issued, however, courts may not examine "an arbitrator's capacity to serve based on a challenge that a given arbitrator is biased." Nat'l Cas. Co. v. OneBeacon Am. Ins. Co., No. 12-11874, 2013 WL 3335022, at *11 (D. Mass. July 1, 2013)(citing Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 489-490 (5th Cir. 2002)).  Indeed, it is well-settled in the law of arbitration that

> [t]he time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award rendered.

Smith v. Am. Arbitration Ass'n, Inc., 233 F.3d 502, 506 (7th Cir. 2000).

Courts have found several narrow exceptions to this general rule, allowing pre-award challenges concerning the contractually required qualifications of arbitrators and imposing injunctions where an arbitration was "futile" because the underlying dispute was "non-arbitrable." See Jefferson-Pilot Life Ins. Co. v.

LeafRe Reinsurance Co., No. 00-c-5257, 2000 WL 1724661, at *2 (N.D. Ill. Nov. 20, 2000); McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1194 (8th Cir. 1997); see also Societe Generale de Surveillance, S.A. v. Ratheon Euro. Mgmt. & Sys. Co., 643 F.2d 863, 868 (1st Cir. 1981).

### c.    The Parties' Arguments

Allstate contends that OneBeacon's inadvertent disclosure to Ehrlich that OneBeacon had nominated him to serve on the arbitral panel was "contrary to both the Protocol and to the reinsurance industry's custom and practice." Although Allstate points to no specific provision that OneBeacon violated, Allstate notes that "[t]he arbitration clause calls for a 'disinterested' umpire" and that the Protocol "prohibited ex parte communications with the umpire candidates." Furthermore, Allstate asserts that "it is customary for the parties to refrain from improper communications with panel members" as indicated by standards of conduct from the Reinsurance and Insurance Arbitration Society of the Association Internationale de Droit des Assurances ("ARIA-US"). Those standards recommend that "the individuals named [as umpire] not be advised of which Party initiated their selection."

OneBeacon responds initially that Allstate has failed to cite any provision of the agreement that OneBeacon has in fact violated. Although Allstate repeatedly invokes the Protocol's

-7-

prohibition against ex parte contacts, OneBeacon emphasizes that Allstate "does not argue that OneBeacon violated [that] agreement." Moreover, OneBeacon rejects Allstate's claims that the custom and practice of the ARIAS-US guidelines have any legal effect because they were not incorporated in the parties' agreement. Finally, OneBeacon maintains that, even assuming arguendo that OneBeacon did violate the arbitration agreement or Umpire Selection Protocol, pre-award challenges to arbitrations are not permitted for claims that an arbitrator is biased.

### d. Application

Allstate's assertion that OneBeacon breached the agreement is unconvincing. As OneBeacon has emphasized repeatedly, Allstate can point to no specific contractual provision that OneBeacon violated. Allstate's arguments that the express prohibition against ex parte contacts, in effect, precluded advising Ehrlich of the manner of his selection contradicts the plain wording of the agreement. Allstate's attempt to add provisions to the agreement by implication based on custom and practice is also unpersuasive. The ARIAS-US guidelines were not incorporated into the agreement and cannot serve as the basis for a breach of contract claim. See Smith, 233 F.3d at 505-06 (excluding arbitration guidelines from agreement because guidelines had not been incorporated).

In addition, Allstate's attempt to distinguish its contentions here from a straightforward, but impermissible, request to remove an arbitrator for bias prior to a final award is unavailing. Allstate seeks an injunction and order removing the Umpire to "maintain the impartiality and neutrality of the umpire selection process," which, despite Allstate's protests, is in all respects a challenge to the impartiality and neutrality of the arbitrator. Pre-award challenges on the basis of bias, as Allstate itself admits, are not permitted. See Nat'l Cas. Co., 2013 WL 3335022, at *11.

At oral argument, Allstate cited in support of its contention an additional case for the Court's consideration. That case, Astoria Medical Group v. Health Insurance Plan of Greater New York, 182 N.E.2d 85 (N.Y. 1962), does not, however, make Allstate's case but rather stands for the simple proposition that "party-designated arbitrators are not and cannot be neutral." Id. at 87. Indeed, the New York Court of Appeals expressly held that while it possesses the authority "in an appropriate case" to disqualify an arbitrator prior to a final award, "the present is not such a case." Id. at 86-87. The opinion confirms rather than refutes the contention that Allstate's subject challenge is, in fact, addressed to the arbitrator's bias. Accordingly, this latest citation does not resuscitate Allstate's case.

Allstate cannot credibly make the case that OneBeacon violated any part of the arbitration agreement, nor can Allstate reasonably contend that its claim is anything but a dressed-up bias claim against an allegedly impartial arbitrator. Therefore, Allstate cannot demonstrate that it is likely to succeed on the merits of its underlying claim.

### (2) Irreparable Harm

#### a. Preliminary Injunction Standard

The second factor to evaluate in considering a preliminary injunction is whether the plaintiff will "suffer irreparable harm in the absence of preliminary relief." Voice of the Arab World, 645 F.3d at 32 (citation omitted). No "mechanical test" exists to calculate "the quantum of hard-to-measure harm that will suffice to justify interim injunctive relief." Ross-Simons of Warwick, 102 F.2d at 19. It normally suffices, however, if the movant demonstrates that legal remedies are inadequate and it faces "a substantial injury that is not accurately measureable or adequately compensable by money damages." Id. at 18-19 (citation omitted). Examples of irreparable injuries include loss of incalculable revenue and harm to goodwill or reputation. Id. at 19-20.

**b.   The Parties' Arguments**

Allstate contends that it will suffer "irreparable harm to the arbitral process" if the arbitration continues with the current Umpire.  In the absence of an injunction, Allstate

> will be forced to participate in an arbitration that was fatally flawed virtually from the outset and will need to be recommenced from scratch upon the removal of the umpire.

Allstate therefore asks this Court to decide "whether the umpire should be removed before the arbitration proceedings begin in earnest."  OneBeacon counters that Allstate will not be irreparably harmed by continuing with the arbitration because it would merely subject Allstate to the same requirements "as all other parties to arbitration."  OneBeacon emphasizes that the basic premise of arbitration is that a party can challenge an arbitrator only after the arbitration proceeding is concluded.

**c.   Application**

Allstate does not proffer an argument of sufficient irreparable harm to warrant an injunction.  Although it claims that no adequate legal remedy could compensate for being forced to participate in a "fundamentally unfair arbitration before a panel that sits in breach of the parties' agreements," such a legal remedy clearly exists in the form of a post-award challenge to the arbitration proceeding itself. See Smith, 233 F.3d at 506 ("To allow a party to bring an independent suit to

-11-

enjoin the arbitration is inconsistent with fundamental procedural principles that apply with even greater force to arbitration than to conventional litigation.").

Allstate's attempt to muster support from case law is unavailing.  It cites a recent case from the District of Kansas wherein a court supposedly found "the cost of defending the arbitration and having the court set aside any favorable award" amounted to an "irreparable injury." See FedEx Ground Package Sys. Inc. v. Vic Jackson Trans., Inc., No. 12-2228, 2012 WL 2953218 (D. Kan. July 19, 2012).  Allstate's citation, however, misplaces the authority and mischaracterizes its holding.  The quoted language actually emanated from McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192 (8th Cir. 1997). In McLaughlin, the Eighth Circuit affirmed the district court's finding of irreparable injury after continuing with a "futile arbitration" of an underlying dispute that itself was "non-arbitrable." Id. at 1194.  Allstate's other citations are equally inapt and unpersuasive because the courts in those cases found invalid or nonexistent arbitration agreements. See, e.g., Vic Jackson Trans., 2012 WL 2953218 at *2 (citing cases where "no valid arbitration agreement exists").  Therefore, Allstate has not demonstrated that it will suffer irreparable harm if it is forced to arbitrate according to its agreement with OneBeacon.

### (3)    Balance of Equities and Public Interest

The third and fourth factors to be considered with respect to a motion for a preliminary injunction are the balance of the relevant equities and the public interest. See Voice of the Arab World, Inc., 645 F.3d at 32.  The Court need not dwell on these prongs, however, because both inquiries are straightforward. Allstate's purported hardship is a lack of neutrality throughout the arbitral process, a harm that would not tilt the balance of equities in Allstate's favor. Furthermore, the issuance of an injunction in this case, a technical skirmish over arbitration procedure between two reinsurance companies, does not rank high in terms of the public interest.  Therefore, Allstate cannot meet its required burden with respect to either factor.

### (4)    Conclusion

Allstate has proven none of the required elements for a preliminary injunction, let alone all of them.  It is unlikely to succeed on the merits of its claim that OneBeacon violated the agreement or Protocol nor show that it will suffer any harm that cannot be remedied through a post-award challenge.  The balance of the subject equities and the public interest are not at issue.  Therefore, this Court will deny Allstate's motion for preliminary injunction.

Although the foregoing analysis addresses the four-factor test applicable to a preliminary injunction, it applies equally

-13-

to Allstate's preceeding motion for a permanent injunction. See Voice of the Arab World, 645 F.3d at 34 ("The standard for a preliminary injunction is essentially the same as for a permanent injunction....") (citing Amoco Prod. Co. v. Gambell, 480 U.S. 531, 546 n. 12 (1987)). Accordingly, this Court will also deny Allstate's motion for a permanent injunction.

### ORDER

In accordance with the foregoing,

1) petitioner Allstate's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 12) is **DENIED**;

2) petitioner Allstate's Motion and Application to Enjoin Arbitration, Remove Umpire and Compel Arbitration (Docket No. 1) is **DENIED**; and

3) respondent OneBeacon's Cross-motion to Compel Arbitration (Docket No. 17) is **DENIED** as moot.

**So ordered.**

                /s/ Nathaniel M. Gorton_____
                Nathaniel M. Gorton
                United States District Judge

Dated October 8, 2013